IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IRVIN HENSLEY,

           Plaintiff,

v.                                                     CIVIL ACTION NO. 2:05-0112

MICHAEL H. HOLLAND, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Currently pending before the Court are cross-motions for summary judgment regarding the denial of the plaintiff Irvin Hensley's application for disability pension benefits. The defendant are Michael Holland, B.V. Hyler, Stephen F. Schaab, and Carlo Tarley as Trustees of the United Mine Workers of America 1950 Pension Plan and Trust (Trustees or defendants). Having reviewed the parties' submissions and the administrative record, the Court **DENIES** the plaintiff's motion for summary judgment and **GRANTS** the defendant's motion for summary judgment.

**I.
FACTS**

Mr. Hensley worked seven years as a coal miner during which time he was involved in two qualifying mine accidents. The first accident occurred on May 11, 1970 when a buggy Mr. Hensley was driving fell into a hole causing Mr. Hensley to jam his neck on the roof of the mine. As a result of the accident, Mr. Hensley was off of work from May 11, 1970 until June 30, 1970. He received a 15% permanent partial disability (PPD) from Worker's Compensation for the first accident. Mr.

Hensley was involved in another accident on August 11, 1972 in which his foot slipped while he was loading rock dust causing him to twist his back. He received Worker's Compensation benefits in relation to the second accident until January 26, 1974; however, Mr. Hensley never returned to work. Additionally, Mr. Hensley received a 10% PPD award for the second accident. After numerous unsuccessful attempts between 1973 and 1976, Mr. Hensley was awarded Social Security Disability Insurance (SSDI) benefits on November 25, 1976, effective August 11, 1972, based on a flattening of the femoral head, a congenital defect caused by Legg-Perthe's disease.[1] Mr. Hensley subsequently filed for a disability pension from the 1950 Pension Trust. The Trustees denied his application on November 11, 1976 because he was not receiving benefits from the Social Security Administration (SSA) as a result of injuries sustained from a mine accident and because he was not totally disabled in a mine accident. Mr. Hensley renewed his application in 1997 and it was again denied on September 18, 1997. Mr. Hensley submitted additional medical evidence and the Trustees reviewed his application numerous other times between 1997 and 2005. The Trustees issued their final denial on January 4, 2005 and in response Mr. Hensley filed the present action seeking to recover benefits on February 10, 2005.

## II.
## Statute of Limitations

The Trustees contend that because Mr. Hensley's cause of action was filed almost twenty-nine years after he was first denied pension benefits, his claims are barred by the applicable statute

---

[1] Defendants describe the disease as "Legg-Calve-Perthes disease is the degeneration of tissue due to inadequate blood supply of the upper end of the femur. The disease develops in childhood, usually between the ages of three and ten." Defs' Mem. in Supp. of Mot. for S.J. at 6, n. 2 (citing 3 J.E. Schmidt M.D., *Attorney's Dictionary of Medicine and Word Finder*, at L-70).

of limitations. The Trustees originally denied Mr. Hensley's claim for benefits on November 11, 1976, and he was informed by the Trust that he had 90 days to appeal the Trust's decision. Mr. Hensley never filed such an appeal but rather waited twenty years to ask the Trustees to review his application. Mr. Hensley argues that because the Trustees reviewed his application as late as 2005, the statute of limitations does not begin to run until after the Trust's final denial dated January 5, 2005.

In support of their argument, the Trustees rely upon *Payne v. Blue Cross & Blue Shield of VA.*, 976 F.2d 727 (4th Cir. 1992) (unpublished decision) and *Dameron v. Sinai Hospital*, 595 F.Supp. 1404, 1414-15 (D. Md. 1984). In *Payne* the Fourth Circuit held that an "ERISA plaintiff may not renew stale claims simply by obtaining reconsideration of a final decision." *Payne*, 976 F.2d at **3 (citing *Dameron*, 595 F.Supp. at 1414-15). The reconsideration referenced in *Payne* was an informal telephone conversation between the plaintiff's counsel and the plan administrator. *Id.* at **1. Likewise in *Dameron*, the reconsideration was simply a recalculation of benefits given new information of the plaintiff's birth date. *Dameron*, 595 F.Supp. at 1414. Unlike the informal reconsideration referenced in *Payne* and *Dameron*, the Trustees in the present case undertook a complete reconsideration of the plaintiff's claim. Not only did they accept new evidence but the Trustees also completely reviewed Mr. Hensley's file on at least three separate occasions. At no point during these reviews did the Trustees ever contend that the plaintiff's request was timed barred. Given the Trustees' extensive reconsideration of Mr. Hensley's claim for pension benefits, the Court finds that the applicable statute of limitations did not begin to accrue until the date of the final denial, January 4, 2005. Thus, Mr. Hensley's claims are not time barred.

## III.
## Denial of Pension Benefits

In order to obtain summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Here, the parties do not dispute the material facts contained in the administrative record. Accordingly, this case may be properly disposed of on summary judgment.

Under ERISA, courts must review an administrator's decision to deny pension plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion.[2] *Id*; *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001) (citation omitted); *see also Boyd v. Trustees of the United Mine Workers Health and Retirement Funds*, 873 F.2d 57, 59 (4th Cir. 1989). Under this abuse of discretion standard, this Court may not disturb the Trustees' decision to deny Mr. Hensley pension benefits if their decision is supported by substantial evidence and is neither arbitrary nor capricious. *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 204 (4th Cir. 1984).

The United Mine Workers of America 1950 Pension Plan provides:

> A participant who is not otherwise eligible for a pension benefit hereunder who became totally disable prior to [December 6, 1974] as the result of a mine accident, after May 29, 1946, while employed in a classified job for an Employer, shall be

---

[2]The parties agree that the abuse of discretion standard controls in this case. *See* Def's Mem. in Supp. of Mot. for S.J. at 15; Pl.'s Mem. in Supp. of Mot. for S.J. at 2.

> eligible for a disability pension benefit while so disabled. A Participant shall be considered to be totally disabled as the result of a mine accident only if, by reason of such accident, he is eligible fore Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

Def.'s Mem. in Supp. Mot. for S.J., Exhibit B at 5. Additionally, the Fourth Circuit explained that for a disability to be "the result of a mine accident," the total disability must have been:

> proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternate job, then his total disability results from a mine accident.

*Boyd,* 873 F.2d at 59 (quoting *Robertson v. Connors*, 848 F.2d 472, 475 (4th Cir. 1988)).

A review of the administrative record in the instant case convinces the Court that the Trustees' decision to deny Mr. Hensley's claim for pension benefits is supported by substantial evidence. Although Mr. Hensley fulfilled the threshhold requirement that he was awarded SSDI benefits, the Trustees determined that he was unable to show that "his total disability result[ed] from a mine accident." *Id.* The record does confirm that Mr. Hensley was involved in two qualifying mine accidents, one on May 11, 1970 and a second on August 11, 1972. The record also shows that following the 1972 accident in which Mr. Hensley twisted his back, he never returned to work. Additionally, the SSA awarded Mr. Hensley SSDI benefits effective August 11, 1972, the date of his second mine accident, due to the flattening of the femoral head. However, the Trustees determined that Mr. Hensley's disability was the result of childhood Legg-Perthes disease rather than a mine accident. This finding is supported by substantial evidence in the administrative record.

Mr. Hensley asserts that the Trustees improperly relied solely on the SSA's determination that he was disabled as a result of Legg-Perthes disease. Mr. Hensley relies on the court's decision in *Norman v. Holland* in which Judge Goodwin stated,

> [T]he Trustees misunderstand their responsibility here. They have limited their inquiry to determining whether the accident caused the specific disability noted by the Social Security Administration in the SSA's determination of eligibility for SSDI benefits. This limited, narrow inquiry is incorrect. The Trustees must determine whether Mr. Norman's total disability resulted from a mine accident, *i.e.* whether the injury sustained in the mine accident, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical or vocations reasons he is unable to perform an alternative job. That is, the question is whether the mine accident was substantially responsible for Mr. Normans' total disability, not whether it caused the specific disability noted by SSA in their determination of SSDI benefits.

962 F.Supp. 843, (S.D.W.Va. 1996). Contrary to Mr. Hensley's assertion, the administrative record does not suggest that the Trustees improperly relied on the basis of Mr. Hensley's SSDI benefits award. Rather, the record shows that the Trustees on multiple occasions reviewed the medical evidence and based their decision on the lack of evidence establishing that the mine accident was substantially responsible for Mr. Hensley's total disability, not just the disability determined by the SSA. In fact, the medical evidence repeatedly shows that while Mr. Hensley complained of persistent back and neck pain, there was no evidence of an injury. Instead, the evidence showed that Mr. Hensley suffered from a flattening of the femoral head which was caused by Legg-Perthes disease and the Trustees found that such a disability had no casual relationship to a mine accident.

Specifically, Mr. Hensley was examined at Williamson Memorial Hospital on August 12, 1972, just one day after the second mine accident, and an x-ray report prepared by Dr. Arthur Levy found that he had a "normal lumbosacral spine." Dr. Levy also noted in his report that he was "suspicious that there has been some flattening of the left femoral head, probably on the basis of old

Legg Perthes disease." Admin. Rec. at 185. Mr. Hensley's treating physician during that visit to Williamson Memorial, Dr. Robert J. Tchou, echoed the diagnosis that the x-ray of the lumbar spine was normal and stated that conservative treatment was carried out and Mr. Hensley "did very well." *Id.* at 186. Following this initial visit, Mr. Hensley repeatedly presented with severe pain to the lower lumbosacral region and repeatedly the attending physicians reported normal examinations of the spine. *See* Admin. Rec. at 187, 195, 202, 277, 286, 287, 319, 330, 333, 340, 342, 374, 395. Additionally, Mr. Hensley was also repeatedly diagnosed with a flattening of the femoral head. *See* Admin. Rec. at 203, 359, 373, 374, 376, 383, 395. Only one report discusses whether there is a casual connection between Mr. Hensley's back pain and his congenital defect. Dr. James Heckman examined Mr. Hensley for Workers' Compensation on July 3, 1974, and after reviewing Mr. Hensley history, stated:

> It is difficult, based on the history obtained and the fact that he does have the developmental abnormalities in both hips, to determine how much of this man's present problem is a result of his alleged injury of August 11, 1972. There is nothing to suggest this man has a ruptured disc, and at the very most we felt that he probably had a lumbosacral strain. It is amazing to this examiner that this man has not returned to work at some type of gainful occupation.
>
> There is no question but what he has x-ray changes of deformity in both hips but these obviously were developmental in character and probably had no connection with his injury. Strictly from a standpoint of his back injury, all one can see at the present time is limitation of back motion. I would be inclined to feel that there is very minimal residual evidence of his injury other than the limited back motion, and we would therefore feel that he is entitled to only a minimal permanent disability as a result fo the back injury and we would recommend a 10 percent partial disability award.

Admin. Rec. at 396. Dr. Heckman's report, in connection with the other medical evidence, supports the Trustees' determination that Mr. Hensley's total disability resulted from a congenital defect and not a mine accident.

Mr. Hensley relies heavily on the report of Dr. Clifford H. Carlson prepared following his January, 2004, examination of Mr. Hensley. Dr. Carlson reviewed Mr. Hensley's medical evidence from 1970 through 1973, some of which was not presented to the Trustees. Dr. Carlson's impression was "chronic lumbosacral spine sprain/strain syndrome with aggravation of degenerative disease and chronic right L5 radiculopathy as evidenced by hypesthesia." Admin. Rec. at 63. Dr. Carlson went on to state that Mr. Hensley's impairment has progressed to "whole person impairment." *Id.* He further opined:

> These injuries are resulting from injuries to his neck and back and progression of degenerative disease resulting from those injuries. The are not related to the Perthes disease and the left total hip replacement which he has had. As a result of these impairments and unrelated to his Perthes disease and hip replacement, Mr. Hensley is permanently and totally disabled.

*Id.* The Trustees accepted the new medical evidence; however, they still determined, after reviewing all of the medical evidence, that Mr. Hensley's condition was not caused by a mine accident. While the report of Dr. Carlson is persuasive, it is not unreasonable for the Trustees to look at the weight of evidence and determine that the reports prepared closer in time to Mr. Hensley's accidents provide a clearer picture of the nature of his injuries.

The decision that Mr. Hensley's disability was not caused by a mine accident is supported by substantial evidence in the administrative record and is not arbitrary or capricious, and thus does not constitute an abuse of discretion. Therefore, this Court must affirm the Trustees' decision to deny Mr. Hensley's claim for benefits under the 1950 Pension Plan.

Because there is no dispute as to the material facts and for the reasons stated above, the Defendant Trustees are entitled to judgment as a matter of law. Accordingly, the Court **GRANTS**

the defendant's motion for summary judgment and **DENIES** the plaintiff's motion for summary judgment.

The Court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 9, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE